IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD C.,[1]

            Plaintiff,                Civ. No. 6:19-cv-01673-AA

    v.                       **OPINION & ORDER**

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

AIKEN, District Judge:

      Plaintiff Donald C. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits.  The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

      On October 6, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and, alleging his disability beginning on December 1, 2011.  Tr. 245-246.  The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on December 5, 2017.  Tr. 95, 150, 156.  On

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

December 8, 2017, filed a Title XVI application for supplemental security income.
Tr. 256-259.  A supplemental hearing was requested and granted.  Tr. 345.  The
previously ALJ had resigned his cases and a new ALJ presided over a second
administrative hearing held on August 9, 2018.  Tr. 29, 31.  At the hearing, Plaintiff
amended his alleged onset date from December 11, 2011, to November 20, 2013.  Tr.
44.  On August 29, 2018, the ALJ issued a decision finding Plaintiff not disabled.
Tr. 10.  On August 13, 2019, the Appeals Council denied review, making the ALJ's
decision the final decision of the Commissioner.  Tr. 1.  This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment
which has lasted or can be expected to last for a continuous period of not less than 12
months[.]" 42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step
sequential process for determining whether an applicant is disabled within the
meaning of the Social Security Act."  *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir.
2011).

> The five-steps are: (1) Is the claimant presently working in a
> substantially gainful activity?  (2) Is the claimant's impairment severe?
> (3) Does the impairment meet or equal one of a list of specific
> impairments described in the regulations?  (4) Is the claimant able to
> perform any work that he or he has done in the past? and (5) Are there
> significant numbers of jobs in the national economy that the claimant
> can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and had not engaged in substantial gainful activity since November 20, 2013. Tr. 15.

At step two, regarding Plaintiff's Title XVI claim, the ALJ found that Plaintiff had the following medically determinable impairments through the date last insured: obesity, obstructive sleep apnea, diabetic neuropathy, and chronic obstructive pulmonary disease. *Id.* At step three, the ALJ found, after analyzing the record and relevant medical data, that Plaintiff's impairments "does not meet or medically equal the criteria of any impairment listed impairments described in Appendix 1 of the Regulations (20 CFR, Part 404, Subpart P, Appendix 1)." Tr. 18.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations:

> The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally crawl. The claimant can occasionally climb ramps and stairs. The claimant can have occasional exposure to concentrated levels of dust, fumes, gases, and the like. The claimant can have occasional exposure to temperature and humidity extremes. The claimant can have occasional exposure to vibration. The claimant can perform frequent, but not continuous, handling and fingering bilaterally. The claimant can occasionally use foot controls bilaterally.

Tr. 19.

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. 21. At step five, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as touch-up screener, table worker, and document preparer. Tr. 22. As a consequence, the ALJ determined that Plaintiff was not disabled. Tr. 23.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony and (2) weighing the medical evidence.

## I.    Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and

convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id*.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id*.

A.    *Plaintiff's Testimony*

During his administrative hearing, Plaintiff testified that he is 47 years old, roughly five feet and eight inches tall, and weighs 310 pounds. Tr. 36, 80, 99. Plaintiff's BMI has a range of 50-59. Tr. 840. Plaintiff habitually consumes alcohol, previously drinking as many as 10-12 beers a day plus wine and whiskey. 133, 352, 368. Plaintiff admits to smoking a pack and a half of cigarettes day in addition to e-cigarettes and marijuana. Tr. 385, 434, 500. He has a high school education and currently lives with his girlfriend and their three dogs in a trailer home. Tr. 36, 45, 100.

Prior to his alleged onset disability date, Plaintiff testified that he had performed manual labor as a rough neck, carpenter, truck driver, and tool grinder. Tr. 47-51, 247-55, 271.   Plaintiff also submitted a Work History Report dated November 12, 2014, he which listed and described those previous occupations. 285-292.  Plaintiff's final listed job was as a "truck driver" for a recycling company that concluded in November 2013, and he testified has not worked since.  Tr. 52, 285.

Plaintiff alleges that his severe medical impairments are "peripheral neuropathy, Chronic Obstructive Pulmonary Disease ("COPD"), obesity, diabetes, and heart failure." Tr. 37, 44, 54.  Plaintiff suffers from diabetes and requires daily insulin.  Tr. 54.  Plaintiff has several broken toes and requires specialized shoes and a cane to walk.  Tr. 38, 57.  Plaintiff testified that he has severe breathing problems that have affected him in a variety of ways.  Tr. 54.  Plaintiff requires an oxygen machine to help him sleep at night.  Tr. 56.  Plaintiff testified that his breathing issues have alleviated somewhat in recent years because of successful treatment and therapy.  Tr. 56.  Plaintiff testified he was previously fired from a construction job after he "fell asleep at the wheel" and "crashed a construction truck into a cement wall."  Tr. 101.

Plaintiff testified that his daily routine is limited to sedentary activities such as lying down on the couch and watching tv.  Tr. 62-68.  Because Plaintiff stated he does not drive, his girlfriend usually gets the groceries.  Tr. 69.  He usually stays at home and has his morning and afternoon meals and shares dinner with his girlfriend when they come home.  Tr. 278.

Plaintiff also submitted an Adult Function Report on November 20, 2014, where he described his physical and mental condition.  Tr. 277.  Plaintiff wrote that he is "now on oxygen 24/7."  Tr. 277.  Plaintiff described that he "cannot stand for more than 30 minutes" and "cannot walk for any distance further than 20 yards."  Tr. 277.  Plaintiff also reported that he sleeps "18 to 20 hours a day" in "two-to-three-hour sessions of uninterrupted sleep at a time."  Tr. 278.  For a question regarding "do you or does anyone take care of pets or other animals" Plaintiff marked "No."  Tr. 278.  Regarding mental tasks, Plaintiff explained that he can handle stress and changes "ok", that he is "fine with" paying attention" and explained that he can follow written and spoken instructions "Just Fine."  Tr.  282.  Under the prescribed restrictions and accompaniment sections, Plaintiff checked "Glasses" and explained they were prescribed years ago.  Tr. 283.  Plaintiff did not check the boxes under "Crutches", "Wheelchair", or "Cane."  *Id.*

### B.    *ALJ Decision*

The  ALJ  made  the  determination  that  Plaintiff's  "severe  medically determinable  impairments  could  reasonably  be  expected  to  cause  the  alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence  and  other  evidence  in  the  record."  Tr. 19.  The  ALJ  also  noted  "non-compliance" with medical advice and a continued failure to seek further treatment demonstrated a limiting disability.  Tr. 20.

The ALJ noted that "the medical record indicates quite a bit of non-compliance" regarding the Plaintiff's physical ailments.  Tr. 20.  A failure to seek or follow treatment was due to factors other than his mental health is a valid consideration for discounting a plaintiff's testimony.  *See Molina*, 674 F.3d at 1114.  The ALJ explained that the Plaintiff "understood the benefit of losing weight and that his medical problems were exacerbated by his obesity."  Tr. 21.  Evidence in record shows several instances of Plaintiff receiving assistance for moderating and alleviating his condition but not following through on them.  Tr. 385, 422,491, 492,537, 538-733, 787, 795, 800.  On November 20, 2013, Plaintiff was referred to a clinical dietician and requested to register for an "Outpatient Diabetes Education" program.  Tr. 787.  Dietetic Technician Christian Wiley met with Plaintiff in November 2013 and outlined a comprehensive meal plan with detailed summaries on daily caloric intake, recommend meal plans, and appropriate eating times.  Tr. 800-801.  Plaintiff has reported drinking up to 12 beers a day plus wine and whiskey.  Tr. 352.  Plaintiff admits to smoking one and a half packs of cigarettes day in addition to e-cigarettes and marijuana.  133, 352, 368, 385, 434, 500.  Plaintiff attended "Smoking Cessation Counseling" where he was warned by physicians that his smoking and drinking are contributing to his condition and abstaining from them would improve his condition.  Tr. 385, 388, 431, 449, 802.  On May 7, 2014, Plaintiff reported to his medical provider that he not using his inhaler to treat his breathing problems because "it's too much like smoking a cigarette."  Tr. 456.  On February 24, 2014, Plaintiff worked with his Primary Care provider to

create a "Current Action Plan" with the goal of addressing his weight and movement restrictions. This plan was monitored several times throughout the year, revisiting goals on September 12, 2014, and concluding on October 22, 2014, that Plaintiff was not adhering to the schedule. Tr. 424. On October 19, 2017, Plaintiff was again reminded about the importance of dieting and exercising, with a treating physician recommending "a low carb diet" to follow. Tr. 795. Because the Plaintiff chronically failed to follow any of his medical professional advice, the record supports the ALJ's conclusion concerning a lack of treatment and an inadequate explanation for failure to seek treatment.

The ALJ explained that Plaintiff was able to manage several of his symptoms with medication and therapy. Tr. 19-21. An ALJ may find that "impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff testified that his breathing has improved in recent years and is "not as bad" as before. Tr. 56. Regarding Plaintiff's foot injuries, the ALJ determined that "the medical record does not contain evidence that these conditions cause significant limitations in basic work activities" and that subsequent surgeries showed improvement. Tr. 17. Plaintiff's reported movement and testing administered by treating physicians are inconsistent. The Court concludes that the ALJ reasonably considered evidence of improvement in Plaintiff's condition when weighing the subjective symptom testimony.

In sum, the Court concludes that the ALJ gave legally sufficient and supported reasons for discounting Plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by discounting the opinions of examining physician, Dr. Collin Blattner.  The ALJ is responsible for resolving conflicts in the medical record.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008)[2].  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]"  *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted).  An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence."  *Id.*

### A.    Dr. Blattner

At the request of counsel, Dr. Collin Blattner performed a "Comprehensive Musculoskeletal Exam" and provided a "Work-Related Activity" report which detailed Plaintiff's physical condition and limitations.  Tr. 809-825.  Dr. Blattner concluded that Plaintiff suffered from "Type 2 Diabetes, Bilateral Carpal Tunnel

---

[2] The Social Security Administration has recently altered the regulation which govern the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022).  Here, Plaintiff filed his initial Title II claim on October 6, 2014, but his Title XVI was filed on December 8, 2017.  Agency policy dictates that the original claim will set the date of filing and therefore the older system will apply.  See POMS DI 24503.050 D.2.a.

Syndrome, Peripheral Neuropathy, Obstructive Sleep Apnea, Morbid Obesity, Exertion Dyspnea and Impaired Balance." Tr. 818. He determined that Plaintiff could "stand or walk less than 2 hours a day…no more than 5 to 10 minutes of walking or standing at a time" and his "maximum sitting capacity is about four hours per day and no more than one at a time." *Id.* Dr. Blattner also recommended a "assistive device of a 4 wheeled walker for long distances." *Id.* Dr. Blattner concluded that Plaintiff "can occasionally climb steps and stairs but no more than 4 or 5 at a time" but "should never climb ladders or scaffolds" yet "can frequently bend over, crouch, kneel and crawl." *Id.* Dr. Blatter opined that Plaintiff "cannot be around heights… no limits to being around excessive noises" and "should not walk around sloped surfaces." Tr. 819. On the "Work-Related Activities" document, Dr. Blattner noted that Plaintiff can perform activities such as "shopping," "traveling without a companion for assistance" and is able to "sort, handle, or use paper/files." Tr. 825.

The ALJ gave "little weight" to the medical testimony of Dr. Collin Blattner because it was "not entirely consistent with the medical record" specifically State Agency reports concerning "the opinions of Drs. Moner and Berner." Tr. 21. State Agency medical consultants Dr. Susan Moner and Dr. Neal Berner provided a non-examining medical assessment of Plaintiff in March and July of 2015. Tr. 127-135,137-46. Both Dr. Moner and Dr. Berner concluded that Plaintiff was "not disabled" after reviewing the medical records provided to them. Tr. 135, 146. Their conclusions, supplemented with detailed explanations, determined that Plaintiff was

capable of sedentary work with certain restrictions relating to periods of standing and walking.  *Id.*

In addition to not being consistent with state medical agencies, Dr. Blattner's testimony was not supported by later examining physicians.  When the record contains "conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Dr. Blattner's assessments are also inconsistent with other medical reports and even his own findings.  In his report, Dr. Blattner notes that Plaintiff has a "waddling gait and impaired balance."  Tr. 821.  Dr. Blattner also noted that Plaintiff's "lungs were clear to auscultation and percussion bilaterally."  Tr. 813. Three months after meeting Dr. Blattner, Plaintiff had a physical exam with Dr. Fredrick Toiber.  Tr. 850.  The ALJ noted that a subsequent physician evaluation with Dr. Toiber explained some of these issues, especially with regards to breathing and circulation, stemmed from his obesity and Plaintiff acknowledged the issue.  Tr. 20.  Dr. Toiber noted that Plaintiff's musculoskeletal range and gait were "normal" and within "range of motion" with no notable symptoms.  Tr. 853.  Dr. Blattner's opinion was contradicted by subsequent physicians and the ALJ correctly assessed the opinions of two conflicting examining physicians.

The ALJ also explained that Dr. Blattner's report was not consistent with Plaintiff's reported symptoms.  Tr. 21.  An ALJ may discount limitations that appear inconsistent with the plaintiff's level of activity.  *Rollins v. Massarnari*, 261 F.3d 853, 856 (9th Cir. 2001).  As discussed above, Plaintiff's subjective testimony

regarding his physical disabilities did not entirely comport with the medical record and previous testimony.  Medical record inconsistencies are especially relevant when a physician is provided with an incomplete medical record to base their opinion on.  *Chaudhry*, 688 F.3d at 671.  Here, Plaintiff reported to Dr. Blattner that he was having "neuropathy symptoms since about 2010" when he was "treated by a physician" but "nothing really helps to relieve the pain."  Tr. 811.  Plaintiff also mentioned "disability due to breathing… since 2011" and "very poor mental clarity." *Id.*  Plaintiff requested that Dr. Blattner "review documentation." Tr. 812. However, on a portion of the report where a client fills in information about specific past surgeries and illness Plaintiff wrote "a lot" and the "2015" with no explanation of what surgery occurred that year.  *Id.*  Further, nothing in Dr. Blattner's reports any previous treatment or medication: there is no mention of Plaintiff's current or past medications, the use of a sleep apnea PAP machine, previous physician recommendations for exercise and dietary plans, Plaintiff's own assessments of recovery and improvement, or any specific details of past surgeries and the results. Tr. 809-825.  The ALJ noted that Plaintiff understood his condition was predicated on a lack of exercise and dieting.  Tr. 21. The record supports this by showing that Plaintiff did report sleep apnea and breathing problems to subsequent physicians and that he understood his lack of adhering to his prescribed treatment plans were contributing to his condition.  Tr. 843, 850.  Dr. Blattner's lack of medical history and information regarding treatments is significant in his ability properly assess his reports and conclusions about Plaintiff's conditions.  Because Dr. Blattner's

evaluation is contradicted by Plaintiff's history of improvement and treatment, the ALJ was correct to discount his testimony against other medical evidence presented.

In sum, the Court concludes that the ALJ gave legally sufficient and supported reasons for the assessment of the opinions of Dr. Blattner.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___21st___ day of May 2023.

_s/Ann Aiken_____
ANN AIKEN
United States District Judge